In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-06-455 CV


____________________



GENE E. BATES, Appellant



V.



THE CITY OF BEAUMONT, Appellee






On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Cause No. E-177-860






OPINION



 Appellant Gene E. Bates appeals the trial court's order dismissing his suit against the
City of Beaumont for want of jurisdiction. See Act of May 15, 2001, 77th Leg., R.S., ch.
413, § 12, 2001 Tex. Gen. Laws 754, 758 (current version at Tex. Loc. Gov't Code Ann.
§ 214.0012(a) (Vernon Supp. 2007)). Bates raises nine issues for our consideration. We
reverse and remand.


Background


 This proceeding began as a suit by Bates for injunction and temporary restraining
order against the City of Beaumont ("the City"). In his original petition, Bates sought to
restrain the City from demolishing his commercial property located at 2510 Calder. The City
responded by filing a plea to the jurisdiction, in which it asserted that the trial court lacked
jurisdiction of the case because Bates did not file suit within thirty days of the date the City
sent him notice of the City Council's decision to demolish the property. The trial court
conducted an evidentiary hearing on Bates's application for temporary restraining order.

 At the evidentiary hearing, the trial court heard evidence that in a letter to Bates, dated
April 4, 2006, the City notified Bates that, pursuant to "City of Beaumont Ordinance Article
III Section 14-50 and 14-51[,]" it intended to hold a "Dilapidated Structure Public Hearing"
during the City Council meeting scheduled for April 25, 2006. The letter also informed
Bates he could attend the hearing to show cause as to why the building should not be
demolished. The City also introduced a certified mail receipt, which indicated that the letter
was delivered on April 6, 2006. In addition, the City introduced a certified letter of April 28,
2006, in which it informed Bates that unless he substantially completed a work program, the
City would demolish the property without further notice. Said letter was marked
"unclaimed" and returned to the City after three delivery attempts.

 The City subsequently promulgated ordinance number 06-026, in which it declared
that Bates's property was a public nuisance and that the building "for want of repairs, or by
reason of age or dilapidated condition, [is] likely to cause or promote fires that would
endanger persons or property." The ordinance also ordered Bates to demolish the building
within ten days or execute a work program, or the building would be demolished without
further notice. Bates filed his lawsuit on October 5, 2006.

 Bates testified that he did not think the structure was unsafe, that "[t]here is not even
a brick that's out of place on the building[,]" and that he has made several improvements
since the property sustained hurricane damage. According to Bates, the building is a steel-framed car wash. Bates testified that he discovered a notice on the door of the property as
he was driving by, and that the notice said that the City intended to demolish the building. 
Upon reading the notice, Bates contacted the City, and he learned the City had sent him a
notice letter that he did not receive. Bates testified that he received the City's previous letter
regarding the City's intention to conduct a hearing on the property at a City Council meeting,
and Bates appeared and spoke at the meeting. As a result of the meeting, Bates repaired a
leak on the roof and secured the building with plywood. Bates testified he did not receive
any other mail from the City regarding the building "until the other day." Bates further
testified that he had never knowingly ignored any certified mail. Bates provided his home
address, which was the same address to which the City had sent all of the notice letters, and
Bates testified, "[i]f letters were sent to that address, I should have received them. . . ."

 Pam Loiacano, the demolition field supervisor for the City of Beaumont Building
Code Department, testified that she initially inspected Bates's property on November 10,
2004, and the City filed a declaration that the property was a dangerous structure on
December 1, 2004. Loiacano testified that on a subsequent inspection on March 7, 2006, she
could enter the rear section of the building. Loiacano's inspection revealed that the roof had
deteriorated, the overhang had rotten material, some fascia board was rotten, and the rear
garage door was open and damaged. Loiacano also observed that although the brick was in
good condition, some of the trim work was rotted, and the inside of the building contained
"human feces and lots of odors. There [was] wiring and piping . . . just hanging[.]" 
Although Loiacano did not climb onto the roof to inspect it, she viewed the front of the
building through the windows and observed "quite a bit of water damage to the interior" and
"a lot of mold and mildew and some water on the floor." In addition, Loiacano testified that
there was evidence that drug users and prostitutes were gaining access to the building, and
the City had received complaints about such activity from citizens.

 Loiacano explained that she was unable to inspect the building's interior after March
7, 2006, because Bates had boarded the building. She opined that the building is substandard
and should be demolished. However, Loiacano also testified that she could not say that the
building was in danger of collapsing. On cross-examination, Loiacano explained, "I wasn't
saying [the building] was unsafe. I was saying it was substandard. If a building is secure and
is in no danger of collapsing, . . . then it's not a dangerous structure. But it still doesn't mean
that it meets code and is not substandard." According to Loiacano, pursuant to city
ordinance, the building "is considered a dangerous structure because it does not meet city
code."

 Loiacano also testified that the City published notices on April 12, 2006, and April
19, 2006, which informed the public of the scheduled April 25 hearing before the City
Council. Loiacano explained that after the City sent the April 4, 2006, letter to Bates, Bates
spoke at the City Council meeting. After the meeting, the City issued a "raze or repair" order
regarding the property. Loiacano explained that once a building is tagged as a dangerous
building, the owner must enroll in a work program and repair the building to "bring it back
into compliance[.]" Loiacano testified that the City sent a letter to Bates on April 28, 2006,
and that said letter informed him that he must enroll in a work program. According to
Loiacano, the City published Ordinance 06-026 in the local newspaper. Loiacano testified
that the City also sent a certified letter to Bates on September 25, 2006, and someone signed
for the letter.



Issue One


 In his first issue, Bates argues the trial court erred in determining that it lacked subject
matter jurisdiction. We review the trial court's jurisdictional ruling de novo. Mayhew v.
Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998); City of Dayton v. Gates, 126 S.W.3d
288, 289 (Tex. App.--Beaumont 2004, no pet.). In doing so, we must determine whether
Bates had alleged facts that affirmatively demonstrate the court's jurisdiction. Tex. Dep't of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). In deciding whether Bates
affirmatively demonstrated the court's jurisdiction to hear the cause, "we consider the facts
alleged by the plaintiff and, to the extent it is relevant to the jurisdictional issue, the evidence
submitted by the parties." Tex. Natural Res. Conservation Comm'n v. White, 46 S.W.3d 864,
868 (Tex. 2001). We must liberally construe the pleadings in favor of jurisdiction. Peek v.
Equip. Serv. Co. of San Antonio, 779 S.W.2d 802, 804 (Tex. 1989). However, if the
pleadings affirmatively negate the existence of jurisdiction, the trial court may grant the plea
to the jurisdiction without giving Bates an opportunity to amend his pleadings. See County
of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002).

 The City's plea to the jurisdiction asserted, among other things, that the trial court
lacked subject matter jurisdiction because Bates failed to file suit within thirty days of April
28, 2006, when the City issued its letter informing Bates that the City had decided to
demolish the property. Ordinance 14-51 declares that all "dangerous buildings" as defined
in ordinance 14-50 are "declared to be public nuisances and shall be repaired, removed or
demolished as hereinafter provided." Beaumont Municipal Code (Tex.), Article III, § 14-51
(1985). Ordinance 14-52, which deals with the procedure to be followed by the City in
ordering repair or demolition of a dangerous structure, states as follows:

 (1) If, after inspection by the building official or designated enforcing
officer, . . . a determination is made that the building is a dangerous
structure, the building official or designated enforcing officer shall tag
the structure and the owner shall be ordered by a certified letter to
contact the building official or designated enforcing officer within
fifteen (15) days from the date of said letter. The owner shall be
ordered, by letter, to enroll in an official work program to repair the
structure or demolish said structure within thirty (30) days. 


 (2) If a permit to repair or demolish said structure is not obtained from
building codes and repairs or demolition are not completed within
forty-five (45) days of the date of the letter provided for in subsection
(1) above, the building official or designated enforcing officer shall
give notice, by letter, to the owner of said structure to appear before the
city council to show cause why said structure should not be demolished
and at the cost of the owner. Building permits issued to repair a
structure under an official work program shall have the same expiration
date as the work program.


 (3) . . . Failure to obtain substantial completion, as defined in the work
program, within ninety (90) days from the date of initiating said
program or failure to obtain a certificate of occupancy within the one
hundred fifty-day period, the structure may be brought before the city
council for a condemnation order without further notice to the
owner. . . .


 (4) Any vacant structure found to be a "dangerous structure" . . . shall be
posted as provided in section 14-50 to prevent occupancy. It shall be
unlawful for any person to occupy a structure that has been tagged as
a "dangerous structure" in accordance with this section.


 (5) All notices, as provided herein, shall be served by delivering same to
the owner or agent in person, or by mailing the same certified to the
residence or business address, if known, of such owner or agent, or by
posting the same in a prominent place upon such building or structure.


Beaumont Municipal Code (Tex.), Article III, § 14-52(1)-(5) (1985). Section 214.001(r) of
the Local Government Code states that "[w]hen a municipality mails a notice in accordance
with this section to a property owner, lienholder, or mortgagee and the United States Postal
Service returns the notice as "refused" or "unclaimed," the validity of the notice is not
affected, and the notice is considered delivered." Tex. Loc. Gov't Code Ann. § 214.001®
(Vernon Supp. 2006). Section 214.0012(a) of the Local Government Code provides as
follows:

 (a) Any owner, lienholder, or mortgagee of record of property jointly
or severally aggrieved by an order of a municipality issued under Section
214.001 may file in district court a verified petition setting forth that the
decision is illegal, in whole or in part, and specifying the grounds of the
illegality. The petition must be filed by an owner, lienholder, or mortgagee
within 30 calendar days after the respective dates a copy of the final decision
of the municipality is personally delivered or mailed to them by first class mail,
certified return receipt requested, or such decision shall become final as to
each of them upon the expiration of each such 30 calendar day period.


See Act of May 15, 2001, 77th Leg., R.S., ch. 413, § 12, 2001 Tex. Gen. Laws 754, 758
(current version at Tex. Loc. Gov't Code Ann. § 214.0012(a) (Vernon Supp. 2007)). 
Section 214.0012 of the Local Government Code waives the City's sovereign immunity when
a plaintiff follows the procedures set forth therein. See generally Teague v. City of
Jacksboro, 190 S.W.3d 813, 816-19 (Tex. App.--Fort Worth 2006, pet. denied) (Section
214.0012 waived the City's governmental immunity from suit when plaintiff complied with
that statute's procedures for challenging a condemnation order by filing a petition within the
thirty-day period.); see also Act of May 15, 2001, 77th Leg., R.S., ch. 413, § 12, 2001 Tex.
Gen. Laws 754, 758 (current version at Tex. Loc. Gov't Code Ann. § 214.0012(a) (Vernon
Supp. 2007)).

 In this case, the evidence before the Court demonstrated that the City sent its first
notification letter on April 28, 2006, via certified mail to Bates's correct residential mailing
address, where Bates had received a previous certified letter approximately three weeks
earlier. The City argues that this letter was its final notice to Bates, and that the thirty day
deadline began to run from that date. We disagree. Following the April 25, 2006 meeting
of City Council, Bates began repairs on the building. The City apparently treated this as the
equivalent of Bates enrolling in a work program for the purpose of bringing the building to
code. After re-inspecting the building, the City sent a second letter, this one dated September
25, 2006, informing Bates that the repairs were insufficient, and that the City would proceed
with the demolition of the building. This second letter is the notification to Bates that a final
decision had been reached by the City. It was from that date that Bates' thirty day deadline
began to run. Bates's filed suit on October 5, 2006, well within thirty days from the date of
the letter informing Bates of the City's final decision. Accordingly, the trial court erred in
determining that it lacked subject matter jurisdiction of the case. See id. § 214.0012(a). We
sustain issue one.

Issues Two, Three, Four, Six, and Eight


 In issue two, Bates asserts that the trial court erred by not holding that the equal
protection and due process provisions under the state and federal constitutions require that
he receive actual notice of the proposed demolition. In issue three, Bates maintains the trial
court erred by "refusing to hold that the equal protection and due-process considerations
underlying Chapter 214 of the Local Government Code . . . require[d] that Bates must receive
actual notice of any proposed demolition by the City of Beaumont by either certified mail,
return receipt requested, or hand delivery of such notice." In issue four, Bates complains that
the trial court erred "in not recognizing that the City's declaration that [the] structure was a
public nuisance and fire hazard required that there be a jury trial on those issues." In issue
six, Bates asserts that the trial court erred by ruling that the City could destroy the property
despite "the City's acknowledgment in open court that it did not have evidence that the
property was a 'dangerous structure[,]'" and by failing to address whether the property was
a public nuisance and fire hazard. In issue eight, Bates argues Chapter 214 of the Local
Government Code is unconstitutional under the state and federal constitutions because it
permits destruction of property "without the receipt of proper notice by the owner of the
precise grounds for the proposed destruction of the property[.]" We decline to address these
issues, as they would afford no further relief than has been granted in our disposition of issue
one.

Issues Five, Seven, and Nine

 In issue five, Bates complains that the trial court erred in finding that only Chapter
214 of the Local Government Code governed the demolition of the property. In issue seven,
Bates maintains that the City "waived its reliance on Chapter 214 of the Texas Local
Government Code" by declaring that Bates's property was a "public nuisance" rather than
a dangerous structure." In issue nine, Bates argues Chapter 214 of the Local Government
Code is unconstitutional "[t]o the degree that [it] allows the City of Beaumont to demolish
the Bates structure without first obtaining a trial court finding that it is a public nuisance[.]"
The record reflects that Bates did not make these arguments before the trial court. Therefore,
they have not been preserved for our review. See Tex. R. App. P. 33.1(a)(1)(A).

 The judgment of the trial court is reversed, and the cause remanded for further
proceedings consistent with this opinion.

 REVERSED AND REMANDED.


 

 

 STEVE McKEITHEN

 Chief Justice

Submitted on September 27, 2007

Opinion Delivered December 20, 2007

Before McKeithen, C.J., Kreger and Horton, JJ.